IN THE MATTER OF THE PETITION OF MARTIN ZBOROWSKI TO VACATE AN ASSESSMENT.

The act of 1865 (chap. 381, Laws of 1865) "in relation to sewerage and drainage in the city of New York" took from the common council and gave to the Croton Aqueduct Board the power to order the construction of sewers, and also gave the power to carry on the work of construction. This transfer does not take away the power from the municipality, but simply changes the mode and the official organ in and through which it is exercised. It is not, therefore, any derogation from the chartered powers and privileges of the city corporation.

The said act of 1865 was not repealed by the act of 1870 (§ 77, chap. 137, Laws of 1870) creating a department of public works; but the power given to the Croton Aqueduct Board by the former act was transferred by the latter to and continued in the department of public works. (EARL, J., dissenting.)

The power given to the common council by the said act of 1870 (§ 2), to regulate by ordinance the building and repairing of sewers, is not to make ordinances to cause sewers to be built, but to regulate the manner of doing the work. (EARL, J., dissenting.)

The power so given to the department of public works to direct the making of sewers is not unconstitutional. The legislature may delegate to a municipality the power to tax for the expenses of the local government and to assess for the expenses of local improvements, to be exercised through certain officers of the corporation.

The determination of a municipality to enter upon a work of public improvement is not invalid because of the lack of prior notice, of intention so to do, to the owners of property to be effected, in the absence of a condition annexed to the gift of power to do the work requiring the giving of such notice.

(Argued November 28, 1876; decided January 16, 1877.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department affirming an order of

Special Term denying the prayer of a petitioner to vacate an assessment upon certain lots owned by the petitioner in the city of New York for building an outlet sewer in Eightieth street, in said city.

The grounds upon which the application was made were that the construction of the sewer was never authorized by the common council of the city; also, that no notice was given to the petitioner of the intention to build said sewer. The sewer was constructed by the order of the commissioner of public works.

*Elliott Sandford* for the appellant. The commissioner of public works had no power to construct the sewer in question until so ordered by the common council. (*In re Dugro*, 50 N. Y., 513; Cooley on Const. Lim., 178, 205; Cooley on Taxation, 48, 51; *Harward* v. *Drainage Co.*, 51 Ill., 130, 135; *Whyte* v. *Nashville*, 2 Swan [Tenn.], 364; *Drainage Co.* v. *Hooper*, 2 Metc. [Ky.], 350.) The ordinances authorizing the construction of the sewer were not properly or legally passed, and are void. (*In re Douglas*, 46 N. Y., 42; *In re Astor*, 50 id., 363.) It was necessary to give notice of the construction of the sewer to the persons owning real estate which would be assessed for it. (*Doubleday* v. *Newton*, 9 How., 72; *Peters* v. *Newkirk*, 6 Cow., 103; 4 Wendell's Black. Com., 283; *In re Empire Bk.*, 18 N. Y., 200, 215; *Elmendorf* v. *Harris*, 23 Wend., 630; *Comrs. of Highways*, 15 J. R., 537; *Owners of Grounds* v. *Mayor, etc.*, 15 Wend., 377; *In re Ford*, 6 Lans., 92, 94; *Jordan* v. *Hyatt*, 3 Barb., 281; *Ireland* v. *City of Rochester*, 51 id., 414; *Cowen* v. *Troy*, 43 id., 48; 2 Greenl., 520; 4 Zab., 718; *State* v. *Jersey City*, 4 id., 662, 666; *Vantilburgh* v. *Shaw*, id., 740; *State* v. *Plainfield*, 9 Vroom, 95; *State* v. *Morristown*, 5 id., 445; *Jewell* v. *Van Steenburgh*, 58 N. Y., 85, 90, 91; *People* v. *Goldtree*, 44 Cal., 23; *In re Smith*, 52 id., 526.) An ordinance of a common council directing a local improvement is a judicial act, of which previous notice must be given. (*Kavanagh* v. *Bklyn.*, 38 Barb., 232; *Roch. White Lead Co.* v.

*Rochester*, 3 N. Y., 464; *Parks* v. *Boston*, 8 Pick., 218; *Rathbun* v. *Acker*, 18 Barb., 393; *Brewster* v. *Newark*, 3 Stock. Ch., 114, 118; *State* v. *Hudson*, 5 Dutch., 475; *Turnpike Co.* v. *Hall*, 2 Harr., 337; *Mayor of Savannah* v. *Hartridge*, 8 Ga., §§ 23, 26.)

*Hugh L. Cole* for the respondent. The petitioner failed to allege sufficient grounds to sustain this proceeding. (*Rich's Case*, 12 Abb., 121; *Hay's Case*, 14 id., 53; *In re Mayor*, 50 N. Y., 504; *Lennon* v. *Mayor, etc.*, 55 id., 36.) No ordinance of the common council is necessary to the legal construction of sewers in the city of New York. (Laws 1870, chap. 137, §§ 77, 78; Laws 1873, chap. 335.)

FOLGER, J. It is conceded by counsel that up to the year 1865, the common council alone had the power to order the construction of sewers. This concession should be somewhat qualified. It is more accurate to say, that the mayor, aldermen and commonalty of New York city, from the date of their ancient charters, had that power, and that up to 1865 it was exercised only through the common council. Some of the older acts required in terms that it should be only so exercised.

In the year 1865 an act was passed, (Laws of 1865, chapter 381, p. 715), entitled "An act in relation to sewerage and drainage in the city of New York." By it the Croton aqueduct board, (see Laws of 1857, chapter 446, § 24, for creation of this board), was given power to devise a plan of sewerage for the whole city, for the purpose of thoroughly draining it. (§ 1.) That board was commanded to lay out the city into sewerage districts, and to show the same and all things relating thereto by maps (§ 2), upon the completion of which, the plan devised should be the permanent plan, and the construction of the work under it should have precedence over any work connected with street improvements. (§ 4.) The board was directed, upon the completion of the plan, to invite proposals and to contract for the whole or any part of the work. (§ 5.) The board should, upon the com-

pletion of the work, file in the office of the board of assessors a statement of the completion and price of the work, and of the property benefited ; and the expenses incurred by the Croton aqueduct board should be assessed upon that property, and the assessment should be confirmed and collected according to law. (§ 6.) The comptroller was directed to pay all the expenses incurred, from the proceeds of assessment bonds. (§ 7.) And it should not be lawful thereafter to construct any sewer save in accordance with that plan. (§ 8.) It is conceded in the Rhinelander case, a kindred case with this, now under advisement, that this act gave to the Croton aqueduct board, the power to order the construction of sewers, and to carry on the work of construction, and that it took away from the common council, the power, it before that had, of ordering the construction. This is not conceded, but is denied, in the case now in hand. We think that a denial is not tenable. The provisions of the different sections, which we have synopsized above, leave no doubt that the concession we have noted above, is well founded in the statute. The provisions of chapter 551 (page 1193) of the Laws of 1866, add strength to this view. But it is said by the appellant, that the power of directing sewers to be built, was conferred upon the mayor, aldermen and commonalty, by the Montgomerie charter. (Valentine's Laws, p. 228, § 16.) So it was. And it has never been taken away. The power has always been, and still is, a corporate power of the municipality of the city of New York. The mode of manifestation has been different, under different charters, and different grants or enactments, of the sovereign power. The power has always been lodged with the municipality. By the Montgomerie charter, it was exercised through the common council. By the act of 1813, (Laws of 1813, chap. 86, § 1), it was, in terms, given to the mayor, aldermen and commonalty, but from the details of the section, was to be exercised by it in common council convened. Just so it was by the older act of 1787. (Valentine's Laws, p. 1181, § 4.) By the act of 1865, as we have seen, the power was still continued in the corporation, but was exercised through

the Croton aqueduct board. The power has never been taken away from the municipality. The modes and official organs in and through which it is to be exerted have been changed; being either the common council, the Croton aqueduct board, the department of public works, and it may be other official exponents, which have escaped our notice in the multifarious statutes which have been enacted for that municipality. That the general power given by the Montgomerie charter, may be curtailed or controled by legislative action, is recognized by this court. (*In re Dugro*, 50 N. Y., 513.) That case is relied upon by the appellant, but it adheres to the doctrine, that this power is conferred for a public purpose, to be exercised in conformity to legislative direction, and subject to be revoked by the sovereign power, save as secured by constitutional inhibition. It has not escaped our attention that there is a distinction to be observed in theory, between municipal legislative power and municipal executive power. When this distinction is kept up in practice, it is the legislative power which devises and ordains and thus initiates, and it is the executive which carries into practical effect. But the legislature is not constrained to confer power in such terms, that it may be exerted only in this way. It is in the legislative province to direct in what way, through what board of municipal officers or agents, or by what individual municipal officers, legislative or executive, the power shall be exerted. If it shall be found that the legislature of the State, has enacted that this power shall be placed in the hands of a single officer, as the commissioner of public works, it is not to be said that this is a derogation from the chartered powers and privileges of the city of New York, so often confirmed to it, but only another mode for the exercise thereof, devised by the wisdom or the will of the legislature. We continue, then, our statement of the expressions of the legislative will. The act of 1870, (Laws of that year, chap. 137, p. 384, § 77), created a department of public works, in the city of New York, and it enacted, that whenever in any existing law, or any ordinance, the phrase "Croton aqueduct board," should occur, it should be construed to mean the

department of public works; and the Croton aqueduct board was abolished. It follows from this provision, that the department of public works thus created, was invested with all the power of the Croton aqueduct board given to the latter by the act of 1865 above noticed, unless that act was repealed in terms or by necessary implication by the act of 1870. It was not repealed by name or direct reference. (See § 120 of act of 1870.) It was not otherwise repealed in terms, unless it was affected by the clause in the last-cited section, repealing all acts or parts of acts inconsistent with the provisions of that act of 1870. Nor was it repealed by necessary implication from the passage of the act of 1870, unless it was so repugnant as that the two could not consist together. The act of 1865 was not inconsistent with that of 1870, in this matter of power to initiate the construction of sewers. The powers given to the common council in this respect are found in section 21 of that act. It has, in general terms, power to make all such ordinances as may be necessary to carry into effect any power then vested in, or by that act given to, the corporation. Now, this, as far as words go, is a broad bestowment of power, and at first reading, it seems to be deeply laden with authority. But if there was power given by any other clause of the act, to other departments of the city government, it was so much taken away from this conferment. If we are right in the notion, that by the clause above referred to, the department of public works, succeeded to the Croton aqueduct board, in the power to initiate and construct all sewers, there was no necessity for an ordinance of the common council to carry into effect the power reposed in the municipality, to cause sewers to be built. Then this general bestowment of power to ordain, is of no effect upon the question under consideration. We must turn to the examination of the particular power, given by the act to the common council; and if we do not find there that that body is vested with the power to cause sewers to be built, we may conclude that there is nothing in the gift of power to the common council by this act which is repugnant to the act of 1865. If we may fairly

say upon a consideration of this enumeration, that there is nothing in it inconsistent with the bestowal of power upon the Croton aqueduct board by the act of 1865, we may conclude that that act has not been repealed in terms or by implication, that it was an existing law after the act of 1870 was passed, and that the department of public works succeeded to the power over sewers, held by the Croton aqueduct board under the act of 1865. By the twenty-first section before referred to, power is given to the common council, "to make such ordinances and with such penalties," in the matters therein enumerated, and among others, "to regulate the opening of street surfaces, the laying of gas and water mains, the building and repairing of sewers and erecting of gas-lights" (§ 21, vol. 5), and "in relation to the construction, repairs, and use of vaults, cisterns, areas, hydrants, pumps and sewers." (§ 21, sub. 20.) We first observe that the ordinances here named, are empowered to be made with penalties. The need of a penalty in an ordinance, expressing the will of the common council, that a sewer or sewers shall be made, is not evident. Though it may be said, that the power to enforce by penalties, is to be applied to those ordinances which are meant to regulate the conduct of corporate agents or of the public. It is more to the purpose, that the power given is not to make ordinances to *cause* sewers to be built; but ordinances to *regulate* the building and repairing and in relation to the construction of them. There are matters, fit to be the subject of an ordinance merely regulating the building of a sewer, as how great a length of street shall be open for the purpose at once, what precautions shall be taken against harm to the public; and other such things will easily suggest themselves. Of itself, this language conveys an idea of a limited power, which idea becomes more strong, on a collation of the language with that of other subdivisions in the same section. Thus where the opening of streets is spoken of, a matter much like the opening of sewers, the terms used are, "to *provide for* and regulate the opening and widening of streets, below Fourteenth street."

(Sub. 6.) So of sidewalks, "to *provide for* and regulate street pavements, crosswalks, curbstones, gutterstones and sidewalks." A consideration of these various subdivisions, shows that the power to regulate is given as to those things which the common council has not the power to initiate or compel; as for instance, to regulate building fronts and house fronts, within stoop lines (sub. 3); to regulate the use of streets and sidewalks for signs, awnings, etc. (Sub. 10.) This same difference in the use of terms runs through various of the laws in relation to the city. Thus, the Dongan charter grants and confirms the power to establish and direct the making of water-courses. (Valentine's Laws, p. 197.) So the Montgomerie charter. (Id., p. 228, § 18.) The act of 1787 (id., p. 1179) provides that the mayor, aldermen and commonalty in common council convened, may make ordinances for the better regulating with uniformity new buildings, and for regulating the streets, slips and wharfs; but (id., 1181) when the power is given to build a sewer, it is said that they may *cause* sewers, drains and vaults *to be made* and constructed in any part of the city. The act of 1801 (id., p. 1184) provides that the corporation, in common council convened, may make by-laws for the better regulating of new buildings and regulating and altering streets, wharfs and slips, but when it gives power to initiate, it says it shall be lawful for the corporation to lay out streets or wharfs and to lengthen and extend them, and to direct piers to be sunk and to cause common sewers, drains and vaults to be made. So the act of 1813 (id., p. 1190) and others might be cited. When we find, in the act of 1870, the use of like limited language in conferring power to pass ordinances as to sewers, together with the fact that by that act the department of public works is put in the place of the Croton aqueduct board, we think that the powers of that board were meant to be continued in that department and that the act of 1865 was not repealed by the act of 1870. It follows that with that department remained the power to determine upon the construction of sewers and that it was not given back to the common council.

There is another clause still to be noticed for the reason that an argument is founded on it against the view herein taken. By section 78 and subdivisions 3 and 7 of it, it is declared that the department of public works shall have the cognizance and control of opening streets, etc., and of public sewers and drainage. Now it is said that if that department had such ample power of sewers it had the same over streets, and these subdivisions are referred to. We have not relied herein upon section 78 as showing a gift of power. The provisions of that section must be made to harmonize with those of section 21. There power is given to the common council to provide for the opening of certain streets. As to them it may be conceded that the department of public works has no power, except in the work to be done, after it is ordered by the common council. Though it is to be noticed that the streets subject to the power of the common council under the provision in section 21, above cited, are only below Fourteenth street. As to streets the Croton aqueduct board had no power by the act of 1865, while it had as to the ordering of sewers, and our argument is that that act existed after the passage of the act of 1870, and that for the Croton aqueduct board in that act the department of public works is substituted. We do not perceive that the specific enumeration in section 78 of the powers of that department conflicts with that view.

It is contended by the appellant that even if the commissioner of public works had seeming power from the statutes to direct the making of a sewer, that he had no power which was constitutional and valid. The position is, that the power to assess property for the expense of a local improvement is a power of taxation. This may be conceded. (*Striker* v. *Kelly*, 7 Hill, 9–24; *The People* v. *The Mayor*, etc., 4 N. Y., 419.) Then, that the power to tax may not lawfully be delegated by the legislature. This we do not concede in that broad statement. The legislature may delegate to a municipality the power to tax for the expenses of the local government, and the power to assess for the expenses of local improvements. All the powers of local government are delegated. In the

case at hand, the power of assessment is delegated to the corporate body, the mayor, aldermen and commonalty of the city of New York, and it may lawfully be exercised through the officers of the corporation, if the terms of the legislative delegation so provide. The whole system of government of the North American States is upon this principle. All through the political arrangement of counties, cities, towns and villages, and even school districts, local affairs, including the power of taxation, are put into the hands of local officers, some of whom, as a single officer, or as boards of officers, determine upon and authorize that which in the end brings upon the owners of property the burden of taxation; and others of whom, singly or as boards, fix the amount of that burden which will be laid upon each owner. As to the propriety and expediency of putting into the hands of one officer the power which has been exercised by the commissioner of public works in New York city under the act of 1870, question may well be made; but the raising and decision of it is for another power than the courts.

Another point made is, that no notice of the purpose to build this sewer was given to the appellant before the work was begun and finished. The appellant cites authorities from which we will not dissent, that no judicial proceeding can be taken by which the property of any one will be affected, without notice first given to him. He also cites authorities from which we will not dissent, that municipal bodies, in devising the plan of street and other improvements, act judicially, and not ministerially. We conceive that the phrase "judicial" is not used in the same sense in the two classes of cases. In the first class, the term is used of such bodies or officers as have the power of adjudication upon the rights of persons and property. In the other class of cases, it is used to express an act of the mind or judgment upon a proposed course of official action as to an object of corporate power, for the consequences of which the official will not be liable, though his act was not well judged; as differing from a ministerial or physical act of an official, for which, if negligently done, he or his superior

will be held to answer. We do not think that the determination of a municipality to enter upon a work of local improvement is invalid for the lack of prior notice of intention so to do to the owners of property to be affected. It is not unusual to add to the gift of legislative power a requirement that notice of a purpose to use it shall be first given before any act is done by virtue of it. It may be conceded that such a provision is highly proper. We are not shown any authority that where the exercise of the power is not thus trameled, the use of it is unlawful. It may be conceded that before an assessment for the expenses of the work is laid, those who are to be affected thereby shall have notice and opportunity to be heard. It is not alleged in this case, that it was otherwise than that. The complaint is that no notice was given of the purpose to build this sewer. We do not think that notice was a legal prerequisite.

The order should be affirmed.

EARL, J. (dissenting). Down to 1865, the power to authorize the construction of sewers in the city of New York was vested in the common council. (Laws of 1787, chap. 8, § 4; Laws of 1813, chap. 86; Laws of 1849, chap. 383.)

In 1857 (Laws of that year, chap. 446, § 24), an executive department was created, denominated the "Croton Aqueduct Board," and it was provided that it should have charge, among other things, "of the public sewers of the city," and that there should be a bureau in that department for "the construction and repair of sewers," and for other things. As the law then stood, the common council, as the legislative department of the city, was authorized to direct the construction of sewers, and the Croton aqueduct board, as an executive department, was authorized to construct the sewers when thus directed, and to take charge of them when constructed.

In 1865, by the act in relation to sewerage and drainage in the city of New York (chap. 381), the power to authorize the construction of sewers was vested in the Croton aqueduct board, consisting of the three persons named in prior acts, and thereafter they had the power both to authorize the construction of

sewers and to construct them; and they continued to possess
this power until 1870. In the latter year, by the act (chap.
137) "to reorganize the local government of the city of New
York," the power to authorize the construction of sewers was
again vested in the common council. By section 21, it was
provided that the common council should have power to make
all such ordinances and regulations as were necessary to carry
into effect all the powers conferred upon the corporation by
that act. Many matters are in the same section specified, in
reference to which ordinances can thus be made, and among
them, in subdivision 5, is "to regulate the opening of street
surfaces, the laying of gas or water mains, the building and
repairing of sewers and erecting gas-lights;" and in sub-
division 20, "in relation to the construction, repairs, care
and use of vaults, cisterns, areas, hydrants, pumps and
sewers." The power thus vested in the common council over
sewers, is as ample as that vested in the same body over streets,
and all the other subjects mentioned in the same section. That
is the section in the main, conferring and defining the
legislative power to be exercised by the common council. By
section 77 of the same act, the Croton aqueduct board was
abolished, and a department of public works was created, the
chief officer of which was to be called "commissioner of public
works." By section 79 it was provided that there should be
several bureaus in the department, and among them one "for
laying water pipes and the construction and repair of sewers,
wells and hydrants, paving and repaving and repairing streets."
Section 78 provides that the department shall have "cognizance
and control," among other things "of opening, altering,
regulating, grading, flagging, curbing, guttering and lighting
streets, roads, places and avenues," and also "of public sewers
and drainage." All the provisions of this act must be con-
strued together and harmonized, if they can be, and it is clear
that by section 21 it was intended to vest in the common council
the power by ordinances to provide for opening streets and
constructing sewers, and by sections 77, 78 and 79, to vest in
the department of public works the power to open the streets

and construct the sewers when thus authorized. If the latter department had the power both to authorize and direct the construction of sewers, and to construct them, and then take charge of them when constructed, it would be difficult to give any force to the language used, or any proper scope to the provisions contained in section 21 in reference to sewers. If that department had such ample power, both legislative and executive, over sewers, they had the same power over streets, and all the other matters mentioned in section 78, and the common council, in reference to matters of great public moment and expense, would be deprived, practically, of all control. After the power to authorize the construction of sewers had, down to 1865, been vested in the common council, and then in a board consisting of three officers, it cannot be believed that the legislature, by the act of 1870, intended to vest in a single officer, the commissioner of public works, such unlimited legislative, as well as executive power. The language in the act of 1870, conferring power over sewers on the department of public works, is no broader or more comprehensive than the language used in the act of 1857, which conferred power over sewers on the Croton aqueduct board, and yet it is undisputed that the latter act did not interfere with the legislative powers over the subject vested in the common council.

The provision that the street department should have " cognizance and control" of sewers, does not confer legislative power. The amendment to the city charter of 1849 (chapter 187, section 12), and the amendment of 1857 (chapter 446, section 23), each provided that the street department should have " cognizance" of opening, altering and grading streets; and yet it was never claimed that such language gave any but executive authority, after the proper ordinances had been passed by the legislative department. Section 21 expressly confers power upon the common council " to provide for and regulate the opening, widening and extending streets below Fourteenth street," and " to provide for and regulate street pavements, crosswalks, curb-stones, gutter-stones and sidewalks ;" and, in section 78, to the street department

is given cognizance and control of "opening, altering, regulating, grading, flagging, curbing and guttering streets," without any limitation. The first provision clearly confers legislative authority, to be exercised by passing ordinances, and the latter executive authority only, with no right or duty to pass ordinances; and by no other construction can the two provisions be harmonized. The provision in reference to sewers, contained in section 21, which is claimed to confer legislative power upon the common council, is found where the legislative power of the common council is defined; and the provision giving "cognizance and control," over sewers, to the street department, is found in a section defining the powers and duties of an executive department.

Legislative power is exercised by the passage of ordinances, and hence it is provided, that the power of the common council over sewers is to be exercised by the passage of ordinances; and the language conferring the power — to pass ordinances in relation to the construction of sewers — is ample, according to its ordinary meaning, to give all the power here claimed for it. The words "cognizance and control," which confer power over sewers, in the street department, are not such as are commonly used to confer legislative authority; they are appropriate words to confer administrative, executive or judicial authority; they imply the existence, actually or potentially, of the sewers over which cognizance and control are to be taken; and it is believed that no case can be found in any statute relating to the city of New York, where these words, or either of them, have conferred other than administrative, executive or judicial authority.

In the construction of the language used, some force should be given to the consideration that the power to authorize and direct the construction of sewers is strictly a legislative one, which is usually vested in the legislative department of a city, and also to the consideration that it is most fit that the power should be vested in the common council, and that it would be a most unusual, if not dangerous power, to be vested unchecked in a single person.

By section 120 all acts or parts of acts inconsistent with the provisions of that act are repealed, and thus the act of 1865, so far as it took power to authorize the construction of sewers from the common council and conferred it upon the Croton aqueduct board, was repealed. This is, however, denied by the counsel for respondents, who relies to support his contention very much upon the following provisions contained in section 77, to wit: "Whenever the words 'chief engineer of the Croton aqueduct board,' or 'president of the Croton aqueduct board,' or 'street commissioner,' shall occur in any existing law, ordinance, resolution, contract or document, it shall be deemed to mean the aforesaid commissioner of public works. And whenever in any law, or in any ordinance, or obligation of the corporation, the words 'street department,' or 'Croton aqueduct board' shall occur, it shall be deemed and construed hereafter to mean the 'department of public works' and the 'commissioner thereof.'" The claim is that the statute of 1865 is kept in force by this clause, and that the powers there vested in the Croton aqueduct board are here vested in the department of public works. The words "existing law" in that clause must be construed to mean any law existing and left in force after the passage of the act of 1870. It could not mean that the department of public works should have the power conferred upon the Croton aqueduct board by any law which was inconsistent with the act of 1870 and repealed thereby.

If the act of 1865 was kept in full force, and power, both legislative and executive, over sewers, was thereby conferred upon the department of public works, why was it provided in section 78 that that department should have cognizance and control over sewers? The plain answer is that general authority over sewers having been, by section 21, conferred upon the common council, and the act of 1865 thus far interfered with, the object of that provision was to qualify the general language used in section 21, and to confer upon the street department executive and administrative authority.

It is an undisputed fact in this case that the sewer in ques-

tion was not authorized by the common council, and that no ordinance was passed in reference to it. It remains to be inquired whether the petitioner can, for that reason, assail the assessment complained of. This form of proceeding to vacate an assessment was authorized by chapter 338, of the Laws of 1858. Section one of that act authorizes the proceeding, if in the proceeding relative to any assessment for local improvements in the city of New York, " any fraud or legal irregularity" shall be alleged. By chapter 312, of the Laws of 1874, an act passed May second, of that year, section 1 of the act of 1858, was amended so as to authorize the proceeding in case " any fraud or substantial error shall be alleged." And by section 2 of the act it is provided, that if upon the hearing it should appear that " the alleged fraud or substantial error," had been committed, the assessment complained of should be vacated. And parties aggrieved in such cases were confined to the remedy furnished by the act of 1858, as amended. On the same second day of May, an act (chap. 313) was passed, amending section 7 of chapter 580, of the Laws of 1872, so as to make the section read, that no assessment "shall be vacated or set aside for or by reason of any omission to advertise, or irregularity in advertising any ordinance, resolution, notice, or other proceeding relative to or authorizing the improvement or work for which such assessment shall have been made or imposed, or for proposals to do the work, or for or by reason of the omission of any officer to perform any duty imposed upon him, or for or by reason of any *defect in the authority of any department or officer upon whose action the assessment shall be in any manner, or to any extent dependent;* or by reason of any omission to comply with or carry out any detail of any law or ordinance; or for or by reason of any irregularity or technicality, except only in cases in which *fraud shall be shown,* and in cases of assessment for repaving any street, etc."

These two provisions of law contained in chapters 312 and 313, passed at the same time, and having reference to the same subject-matter, must be read and construed together.

They should be so construed as that both can be operative.

Here, there was certainly a "substantial error" within the meaning of chapter 312. A sewer was constructed which was wholly unauthorized by any law or ordinance. It is not a case of a defective execution of any power or of an irregular proceeding under any ordinance. It is the case of an assessment wholly unauthorized, not of one irregularly, or defectively imposed. It is difficult. to conceive of an error more substantial.

This is not a case within chapter 313, merely of a " defect in the authority of any department or officer upon whose action the assessment " depended. It is not a case of defective authority, but the absence of all authority. It is a case where no action whatever was taken by the common council, the source and foundation of all authority in the proceeding. It is not a case of mere "irregularity or technicality," but one of most substantial defect.

Under chapter 312 assessments can be vacated for substantial error. Chapter 313 provides that certain errors and irregularities shall not be deemed substantial. Taking the two sections together, it is clear that an assessment for any improvement, wholly unauthorized by law or by competent authority, may be set aside, but that when an improvement has been authorized, and there is a mere defect or irregularity in the subsequent proceedings in carrying into effect the authorized improvement, generally, the assessment may not be vacated in the absence of fraud. (*In the Matter of the Second Avenue Methodist Episcopal Church*, recently decided in this court.)

Without, therefore, considering the other ground upon which the petitioner based his claim for relief, I conclude, differing from my learned brethren, that the assessment complained of must be vacated.

ALLEN, RAPALLO and MILLER, JJ., concur with FOLGER, J. CHURCH, Ch. J., and ANDREWS, J., concur in result on the

ground that under the act, chapter 380, Laws of 1872, this remedy was not authorized.

Earl, J., dissents.

Order affirmed.