ROBERTS *v.* SMITH.

1. DRAINS—TAXATION—EMINENT DOMAIN.

   The levy and collection of taxes to pay for the construction of a public drain is not an act within the constitutional restrictions upon the "taking" of private property for public use.

2. SAME—NECESSITY—NOTICE—DUE PROCESS OF LAW.

   A drain law, therefore, which makes the determination of the commissioner conclusive upon the question of the public necessity for a proposed drain when all rights of way are obtained without condemnation proceedings, and which fails to provide, where such proceedings are taken, for notice to those whose lands are within the assessment district, but are not traversed by the drain, is not unconstitutional as violating such provisions, or as authorizing the taking of property without due process of law.

3. SAME—APPEAL—ASSIGNMENTS OF ERROR.

   An objection to drain proceedings on the ground that the drain commissioner was an interested party will not be considered on appeal where it is not raised by any assignment of error.

4. SAME—CERTIORARI—CONCLUSIVENESS OF RETURN.

   On *certiorari* to review drain proceedings, a return in denial of allegations tending to show that the special commissioners were not "disinterested freeholders." as required by statute, is conclusive.

Error to Livingston; Davis, J., presiding.  Submitted October 7, 1897.  Decided November 17, 1897.

*Certiorari* by Jerry Roberts to review the action of Timothy Smith, drain commissioner of Livingston county, in laying out and establishing a drain.  From a judgment sustaining the proceedings, plaintiff brings error.  Affirmed.

*W. H. S. Wood* and *Louis E. Howlett*, for appellant.

*Claude A. Brayton*, *Dennis Shields*, and *Edmund C. Shields*, for appellee.

HOOKER, J.  We are asked to review the judgment of the circuit court in relation to drain proceedings, brought before it by *certiorari* to the drain commissioner, the circuit court having affirmed them.  Counsel discuss two questions, viz., the constitutionality of the drain law, and the qualifications of the commissioners to act.  We have held that the drain law of 1885 is constitutional. *Gillett* v. *McLaughlin*, 69 Mich. 547; *Smith* v. *Carlow*, 114 Mich. 67.  Counsel treat that question as settled, and have discussed only such questions as are based on the amendments to that law.  The principal objection made is that under the law, as it now reads, persons who do not own lands traversed by the drain, but who are within the assessment district, have no opportunity to be heard upon the question of the necessity for laying the drain.  It is said that the law of 1885 gave this opportunity by providing that "all who will be liable to assessments for benefits," as well as "all whose lands are traversed by the drain," shall be served with the citation, and heard, in the condemnation proceedings.  3 How. Stat. §§ 1740c–1740c2.  It is said that similar provisions are contained in the legislation of 1891 and 1893.  See Act No. 187, Pub. Acts 1891, chap. 3, § 8; Act No. 203, Pub. Acts 1893, chap. 3, §§ 7, 8.  In the law of 1895 persons of the former class are omitted, provision being made for

the citation of those only whose land is traversed by the drain.    Act No. 217, Pub. Acts 1895, chap. 3, §§ 6–8.

The petitioner's brief contains a lengthy argument upon the proposition that persons within the assessment district are entitled, under the Constitution, to a hearing upon the question of the public necessity for the drain.    The provisions of the Constitution cited (article 18, §§ 2, 14; article 15, § 15) have reference to the taking of *specific property for public uses* or improvements, like highways, public buildings, or drains.    They have no reference to taxes levied and collected to pay for such improvements.    It is under and by virtue of these provisions that drain laws must and do contain provisions for taking property that conform to the requirements of these sections, which have special reference to the power of eminent domain.    There is nothing in these sections to prevent, nor have counsel called attention to any other constitutional impediment to, the determination of the question of public necessity for a proposed drain by a commissioner.    The sections mentioned impose limitations on the conclusiveness of such determination in favor of the owner of land, in the defense of condemnation proceedings, to which those liable to assessments for benefits need not be parties.    All of the recent drain laws have authorized the commissioner to determine the necessity for the drain; and the law of 1885, which has been held constitutional, has not provided for a hearing upon the question of necessity, except in condemnation proceedings; and the argument that, where all rights of way are obtained without condemnation proceedings, such parties cannot be heard upon the question of public necessity, is as applicable to the law of 1885 as to that of 1895.    See 3 How. Stat. §§ 1740*b*8, 1740*b*9, 1740*d*8.    We are not aware of any cases that hold that all persons subject to assessments for drains must have notice of, and a hearing upon, the question of the public necessity.    If the Constitution requires it, the same requirement would appear to be applicable to other public improvements, such as highways, waterworks, public

buildings, and the like; and it might be plausibly urged that all taxation would be subject to the same right.

Assessments for the expense of a drain are not a taking of private property, within the sections cited, under the power of eminent domain. An elaborate discussion of this subject will be found in the case of *People* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 419 (55 Am. Dec. 266), where it is held that such assessment is an exercise of the taxing power (see page 430), and fully sustains the power of imposing local burdens upon those benefited. It is there said that "there never was any just foundation for saying that local taxation must necessarily be limited by, or co-extensive with, any previously-established district." The case is the settled law of New York, having been cited with approval in many cases. *Sun Mut. Ins. Co.* v. *Mayor, etc., of New York*, 8 N. Y. 251; *Town of Guilford* v. *Chenango Co. Sup'rs* 13 N. Y. 146; *Bank of Rome* v. *Village of Rome*, 18 N. Y. 44; *Brewster* v. *City of Syracuse*, 19 N. Y. 118; *People* v. *Smith*, 21 N. Y. 599; *Howell* v. *City of Buffalo*, 37 N. Y. 269; *People* v. *Montgomery Co. Sup'rs*, 67 N. Y. 115; *In re Ryers*, 72 N. Y. 10; *Darlington* v. *Mayor, etc., of New York*, 31 N. Y. 190 (88 Am. Dec. 248); *In re Townsend*, 39 N. Y. 181; *In re Zborowski*, 68 N. Y. 96; *Stuart* v. *Palmer*, 74 N. Y. 190 (30 Am. Rep. 289). The case is approved by the Supreme Court of the United States in *Gilman* v. *City of Sheboygan*, 2 Black, 510.

It is also contended in this case that the law is void, in that it provides for the taking of property without due process of law. We understand, however, that this claim rests upon the alleged right of the appellant to contest the public necessity for the drain, and that it is not denied that the law provides for notice of the assessment, and an opportunity to be heard thereon. An interesting discussion of this question will be found in some of the cases cited. *Stuart* v. *Palmer*, 74 N. Y. 190 (30 Am. Rep. 289); *In re Zborowski*, 68 N. Y. 98. We think that our own decisions are conclusive. *Borgman* v. *City of De-*

*troit,* 102 Mich. 261; *Scotten* v. *City of Detroit,* 106 Mich. 564.

The proceedings are attacked upon the grounds that the drain commissioner and two of the three special commissioners were interested parties. The interest of the drain commissioner is not raised by any assignment of error, and therefore cannot be considered. The same may be said as to the alleged defect in the petition for the appointment of three disinterested freeholders as commissioners. The return shows, however, that such were appointed. The interest which the special commissioners are alleged to have had is: *First,* that they were benefited by and assessed for another drain, for which the drain in controversy is designed to be an outlet, and the cleaning out of which will become necessary if this drain be made; and, *second,* that they will be benefited by the projected drain, if laid. The return of the commissioner disputes these allegations, except that they were assessed for the Conway and Cohoctah drain. We cannot take judicial notice that they were interested, and the return shows that they were not.

The judgment of the circuit court is affirmed.

The other Justices concurred.