LEACH v. WHITBECK.

EXECUTION — BODY EXECUTION — IMPRISONMENT — SOLITARY CON-
FINEMENT—PROPRIETY.

On certiorari to review the denial of a mandamus against a
sheriff to compel him to relieve relator, imprisoned on civil
process, from solitary confinement; to permit relator to have
daily papers, furnished by his relatives; and to permit rela-
tor to receive his wife and other relatives at the jail, evi-
dence examined, and *held*, by a divided court, that there was
evidence to sustain the conclusion of the circuit judge that
the sheriff had not abused his discretion, whence the order
would not be disturbed.

Certiorari to Allegan; Padgham, J.  Submitted No-
vember 12, 1907; reargued February 17, 1908.  (Calen-
dar No. 22,515.)  Decided March 5, 1908.

Mandamus by John H. Leach to compel Allen L.
Whitbeck, sheriff, to grant relator certain jail privileges.
There was an order denying the writ, and relator brings
certiorari.  Affirmed by a divided court.

*Perle L. Fouch* and *Milo D. Campbell*, for relator.

*Clare E. Hoffman*, for respondent.

MOORE, J.  This is a writ of certiorari to review the
decision of the Allegan county circuit court in dismissing
a petition for mandamus.  On July 16, 1907, relator filed
a petition against Allen L. Whitbeck, sheriff, the object
of which was to obtain a writ of mandamus to compel the
sheriff to relieve the relator from solitary confinement, in
which he claimed he had been placed; to permit relator
to have reasonable exercise; to allow relator to have the
daily papers furnished by his relatives; to permit relator
to receive his wife and other relatives and friends at said
jail; all of which he claimed was denied him.

An answer was filed by the sheriff, an issue was

framed, and upon the trial thereof the judge found the allegations of the petition were not sustained. In his return to the writ of certiorari the circuit judge, among other things, says:

"After hearing the testimony offered by the respective parties and listening to the argument of counsel, it appeared to the court that no sufficient showing had been made to give the court jurisdiction to grant a mandamus; that all of the matters and things set forth in the petition, and which it was sought to compel the sheriff to do, were matters and things which rested in his discretion. There was no evidence which tended to show that the sheriff had abused this discretion, and the court further found from the testimony in the cause that the allegations contained in said petition were not sustained by the evidence.

" It further appeared to the court that the sheriff had permitted the relatives and friends of the said John H. Leach to visit him at all proper times, and that for some months the friends and relatives of said John H. Leach abused the privilege granted them, came very frequently to the jail, threatened the sheriff, and their conduct was such as to warrant the sheriff in fixing visiting days.

" It further appeared to the court that petitioner was not kept in solitary confinement; that he was not kept in such close confinement as to in any way impair his general health; that his general health was not impaired by his confinement; that he received all the air that was needed; that the rooms that he occupied were properly ventilated; that the jail was of modern construction; that the prisoner had ample opportunity to take exercise; and so far as the evidence shows, was given all the privileges and usages of a prisoner confined on civil process, and that the restrictions finally imposed by the sheriff were reasonable and that there was no abuse of discretion in imposing such regulations.

" It further appeared that petitioner, John H. Leach, occupied the civil department of the jail, being the only civil prisoner in said jail, that said department contained two cells and a corridor, and petitioner had the use of the whole thereof.

" That said rooms were clean, properly ventilated, and sanitary. No complaint was every made by petitioner in regard to his treatment by the sheriff except on one occasion, when he complained that one of the closets made

a sizzling noise, and he testified that the sheriff said that he would have the same fixed at once. Petitioner made no complaint about the quantity or quality of the food furnished him by the sheriff, except on the hearing, when for the first time he claimed that since some time in May he had not been served with pie, cake and sauce; that he never made any request of the sheriff that was not granted, except that the sheriff refused to permit him to place a private telephone in his department to be used for his pleasure.

"It further appeared from the testimony that between the second day of July, and the twenty-ninth day of July, the latter date being the date of the joining of issue in this cause, that the said John H. Leach was visited by the following named persons: One Simpkins; Charles Guest; his son-in-law, Mr. Eldred; his wife, Mrs. Leach; Mr. Fouch; Mr. Cross; Drs. Robinson, Van Ness, and Taylor; and by his daughter, Mrs. Cheeseman; and his son-in-law, Mr. Cheeseman; that his wife was never refused permission to see him when she called on visiting days as fixed by the sheriff, and at the hours as fixed by him; that his daughter-in-law, Mrs. Eldred, and his son-in-law, Mr. Cheeseman, were never refused permission to see him. That his daughter, Mrs. Cheeseman, was never refused permission to see him except on one occasion, and at that time she called after visiting hours, and on one occasion when she called after the visiting days had been changed, and then she was afterward permitted to see him.

"No testimony was introduced on the part of the petitioner to show what the customary rights, usages, rights and privileges of prisoners are when confined on civil process. Neither were any authorities cited tending to show what these rights and privileges were, and the order sought to be obtained by the petitioner had reference to matters purely discretionary with the sheriff; and from the testimony as a whole I was unable to find any legal duty that the sheriff should have performed which he neglected or refused to perform."

An examination of the 238 pages of typewritten testimony shows an abundance of evidence to sustain the conclusions of the circuit judge. We decline to disturb them. See *First Nat. Bank of Paw Paw* v. *Walker,*

115 Mich. 439; *Roberts* v. *Smith,* 115 Mich. 5; *Taylor* v. *Shimmel,* 107 Mich. 676.

Judgment is affirmed, with costs.

GRANT, C. J., and OSTRANDER, and HOOKER, JJ., concurred with MOORE, J.

McALVAY, J.   Relator, who claims he is unlawfully imprisoned in solitary confinement by the sheriff of Allegan county, who holds him upon a body execution in a civil suit, applied to the circuit court for mandamus to relieve him from such unlawful treatment.   His petition was denied, and the case is before us upon a writ of certiorari to review the decision of the circuit court.

Petitioner is 58 years old and is imprisoned in a civil suit upon a capias ad satisfaciendum.   His imprisonment began April 11, 1907, and until July 2, 1907, he was allowed certain liberties and privileges.   His wife and friends visited him.   They furnished him newspapers. His wife provided him an easy chair, a strip of carpet for the narrow alley in his room, and a small rug before his cot.   He is not kept with prisioners detained for criminal offenses but in that portion of the jail provided for civil prisoners.   This is a compartment 11 by 14 feet with a solid iron door and one window.   Within this compartment are two cells 7 feet square leaving an alley in front of them about 4 feet wide and 14 feet long.

After July 2, 1907, relator was locked up within this small space, deprived of the chair, carpet, and rug furnished by his wife, and also of all newspapers, and was not permitted during that time to come out for exercise or any other purpose until brought before the court August 17, 1907, upon the hearing of his petition, with one exception, when he was before the court on the return day of the order to show cause.

Upon the filing of the answer 13 issues of fact were framed, and upon the hearing a large amount of testimony was taken, the transcript of which covers about 240 typewritten pages.  The court refused relief upon the

ground that upon the showing made he had no authority whatever by mandamus to direct the sheriff in the matter.

In an opinion filed, the trial judge holds that the whole matter is one of discretion on the part of the sheriff. Upon being asked by relator's attorney whether he found that the imprisonment amounted to solitary confinement, the court said:

"I find that under this testimony it does not amount to solitary confinement. There is no solitary confinement."

Reliance is placed upon the fact that this court will not disturb this finding of the court below. One of the exceptions to that rule is that it will do so where the finding is contrary to the undisputed evidence. In this case the evidence as to the nature of the confinement which respondent is inflicting upon relator is undisputed and is as set forth in the facts just related.

The only question for us to consider is whether this imprisonment is solitary confinement and may be imposed lawfully upon relator. The only provisions in the statutes of Michigan relative to the solitary confinement of prisoners confined in county jails are contained in sections 2651 and 2652, 1 Comp. Laws.

"When any convict shall be sentenced to solitary imprisonment and hard labor in any jail, the keeper thereof shall execute such sentence of solitary imprisonment, by confining the convict in one of the cells, if there be any in such jail, and if there be none, then in the most retired and solitary part of such jail.

"No intercourse shall be allowed with any convict in solitary imprisonment, except for the conveyance of food, and other necessary purposes, unless some minister of the gospel shall be disposed to visit him, in the manner hereinafter provided."

Sections 2674 and 2675, 1 Comp. Laws, provide for the punishment of refractory prisoners.

"If any person confined in any jail, upon a conviction or charge of any criminal offense, shall be refractory or disorderly, or shall wilfully or wantonly destroy or injure

any article of bedding, or other furniture, or a door or window, or any other part of such prison, the sheriff of the county, after due inquiry, may cause such person to be kept in solitary confinement, not more than ten days for any one offense; and during such solitary confinement, he shall be fed with bread and water only, unless other food shall be necessary for the preservation of his health.

"If any person committed to jail on original process or on execution, or for any other cause than those mentioned in the preceding section, shall be guilty of either of the offenses therein specified, and be thereof convicted before a justice of the peace of the county, on the complaint of the keeper of such jail, such person shall be punished by solitary imprisonment, as directed in the preceding section, not more than ten days for any one offense; and such offender shall be liable for double the amount of the damages done to the jail, furniture, or other property, to be recovered with costs of suit, in an action of trespass, in the name of the board of supervisors of the county."

The decisions which discuss the subject of solitary confinement are very few. In the United States Supreme Court Reports we find a description and a statutory history of such punishment given. In *Re Medley*, 134 U. S. 160, the court says:

"The peculiarities of this system were the complete isolation of the prisoner from all human society, and his confinement in a cell of considerable size, so arranged that he had no direct intercourse with or sight of any human being, and no employment or instruction."

The court said that it is this mode of imprisonment to which the term "solitary confinement" was usually applied. The statute the court was at the time considering was a modification of the original principle of "solitary confinement" by which it was provided that "no person shall be allowed access to said convict, except his attendants, counsel, physician, a spiritual adviser of his own selection and members of his family, and then only in accordance with prison regulations."

The court said:

"Even the statutory amelioration is a very limited one. * * * The solitary confinement, then, which was meant by the statute, remains of the essential character of that mode of prison life as it originally was prescribed and carried out, to mark them as examples of the just punishment of the worst crimes of the human race."

The court, citing the first English statute imposing solitary confinement, quotes from 25 Geo. II, chap. 37, entitled:

"An act for better preventing the horrid crime of murder.

"Whereas the horrid crime of murder has of late been more frequently perpetrated than formerly; * *. * and whereas it is thereby become necessary that some further terror and peculiar mark of infamy be added to the punishment of death now by law inflicted on such as shall be guilty of the said heinous offense," (then follows the provision for solitary confinement).

The court proceeds:

"This statute is very pertinent to the case before us, as showing, *first,* what was understood by solitary confinement at that day, and, *second,* that it was considered as an additional punishment of such a severe kind so that it is spoken of in the preamble as 'a further terror and peculiar mark of infamy' to be added to the punishment of death. In Great Britain, as in other countries, public sentiment revolted against this severity, and by statute * * * the additional punishment of solitary confinement was repealed."

The foregoing is given as the conclusion of the Federal court from its investigation as to what was originally the true significance of the term, "solitary confinement," and the reason for its statutory enactment. By comparing the imprisonment of relator with that described by the Supreme Court of the United States as solitary confinement, we may determine whether his confinement is as claimed, solitary confinement.

It is admitted that he is confined alone in this part of the jail which has one window, and in which are two cells and a narrow space 4 feet by 14 feet for his exercise; that

the solid iron door is kept locked and he is deprived of books and newspapers. He is "without employment or instruction." This condition fits exactly the description of the court above quoted as the "mode of imprisonment to which the term solitary confinement was usually applied."

In the case at bar there were modifications of the extreme severity of this confinement. The Federal court pointed out the modifications of the statute under consideration. They were, "no person shall be allowed access to said convict except his attendants, counsel, physician, a spiritual adviser of his own selection, and members of his family, and these only in accordance with prison regulations."

Respondent, assuming the right to hold this civil prisoner in this apartment, issued certain prison regulations relative to his confinement:

"July 27th, 1907.
"Hon. P. L. FOUCH,
        "Allegan, Mich.
    "*Dear Sir:*  In reply to your request, as attorney for John H. Leach, and also in reply to the request of his son-in-law, Mr. Eldred, for certain information relating to the confinement of Mr. Leach, permit me to inform you as follows:

    "For the present, relatives of Mr. Leach and persons having important business with him, will be permitted to visit him on Tuesday of each week, between the hours of two and four o'clock p. m. for a period of fifteen minutes (or longer in the discretion of the officer in charge). Such interview must be in the presence of an officer, and will not be permitted unless the prisoner and the visitors refrain from abusive conduct toward the one in charge of the jail at the time of such visit.

    "The daily papers will not be given to the prisoner. Books may be brought to the jail and will be given to the prisoner if deemed advisable.

    "The prisoner will be permitted to supply himself with articles of clothing but his food will be furnished at the jail.

    "Letters directed to Mr. Leach will be given to him but

will first be read by the officer in charge of the jail at the time they are delivered.

"Respectfully,

Signed:　"Allen L. Whitbeck,
　　　　　　　　　"Sheriff."

Relative to these modifications of petitioner's condition by prison regulations, we may with truth and propriety repeat what was said by the court in the case from which we have quoted:

"The statutory amelioration was a very limited one. * * * The solitary confinement, then, which is meant by the statute, remains of the essential character of that mode of prison life as it originally was prescribed and carried out, to mark them as examples of the just punishment of the worst crimes of the human race."

The records of the courts of this State do not show that any prisoner, civil or criminal (except convicted of a capital offense), has ever for such a length of time been subjected to such punishment.

The prisoner in this case is not a criminal and should not be treated as a criminal. The fact that the statute (3 Comp. Laws, § 10534) provides that "on no pretense whatever shall prisoners on civil and criminal process be put or kept in the same room" emphatically indicates this distinction. Prisoners charged with crime in this jail were treated with less severity than relator.

The court recognizes that a sheriff has a discretion in regard to the care and treatment of prisoners held by him upon both criminal and civil process. That discretion is subject, however, to limitations, and must not be abused. We think in this case that the sheriff abused this discretion and that the facts warrant the interference of the court. Such treatment of a civil prisoner is not authorized by law, and is contrary to every sentiment of justice and humanity. The confinement under which relator has been held since July 2d is practically solitary confinement. Nothing has disturbed its solitude except a few brief visits, concerning some of which there is a dispute.

It is urged that respondent has no other place provided

by the county in which to confine prisoners committed upon civil process. The question before us is not *where* the relator has been confined, but *what has been the nature of that confinement.* From this record we cannot say that this apartment is unsuitable and too small for the use for which it was intended, provided respondent used reasonable discretion in his treatment of his prisoner. If it were too small this court would exercise its authority to order that a suitable place be provided or that the prisoner be enlarged. He does not ask in this case to be enlarged. He asks for release from solitary confinement, for air and exercise, and that he be allowed to have newspapers and books.

The reasons given by this man for keeping relator shut up alone for this length of time in this manner are too trivial to warrant the severity of what may be truly called his punishment. He may have done things contrary to the rules of the jail, but if he did these things he was not told he was breaking the rules. He may have been annoying and disagreeable, but on that account respondent cannot confine him contrary to law.

It is evident from this record that the true reason why relator on the 2d of July was deprived of his privileges and locked up without sufficient space for exercise was because the attorney for plaintiff in the civil suit advised and requested such action. The attorney for said plaintiff was not the proper party to advise respondent as to his treatment of relator, although he was the public prosecutor, and respondent should not have acted upon such advice but should have sought unbiased and disinterested counsel.

The record in the case shows that with but little trouble relator could be allowed to exercise in the main corridor. He is certainly entitled to exercise sufficient to preserve his health, and to sufficient fresh air. There can be no sufficient ventilation of the room except when the wind is from one direction. The allowance of papers and reading matter would also be entirely reasonable. For the

reasons above given the judgment of the circuit court should be reversed and set aside, with costs of both courts, and a writ issued directing respondent to desist from further confining relator in the manner above stated, and to give him opportunity for daily exercise in the main corridor, or elsewhere, and to open the door of his room for sufficient time to give complete change of air. If a satisfactory order cannot be agreed upon between the parties the court should enter such order as the circumstances require.

BLAIR, MONTGOMERY, and CARPENTER, JJ., concurred with McALVAY, J.