# STATE OF MICHIGAN

# COURT OF APPEALS

---

APEX LABORATORIES INTERNATIONAL
INC.,

        Petitioner-Appellee,

v

CITY OF DETROIT,

        Respondent-Appellant.

UNPUBLISHED
May 17, 2018

No. 338218
Tax Tribunal
LC No. 16-000724-TT

---

Before: SERVITTO, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Respondent City of Detroit (Detroit) assessed income taxes to petitioner Apex Laboratories International, Inc (Apex). By this action, Apex challenged Detroit's income tax assessment and sought a refund of income taxes paid. Detroit appeals by right the order of the Michigan Tax Tribunal (the Tribunal) granting Apex's motion for summary disposition and denying Detroit's motion for summary disposition. We affirm.[1]

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case involves the liability of Apex for payment of Detroit income taxes. The parties do not dispute the underlying material facts. A Detroit-based private equity firm, Huron Capital Partners LLC (Huron), solicited investors to acquire partnership interests in a limited partnership, The Huron Fund II, LP (the Fund), which in turn was to acquire shares in existing "lower middle-market" companies. The general partner of the Fund was an entity known as Huron Capital Partners GP II, LLC (the general partner); however, the business operations of the general partner and the Fund were carried out by Huron.

In 2006, Huron recommended that the Fund acquire shares in (as well as debt of) Labstat International, ULC (Labstat), a Canadian company, for eventual sale. As part of the transaction,

---

[1] The taxes at issue were paid for the fiscal years ending in 2011 and 2013; however, because the Tribunal adopted the convention of referring to those fiscal years as the 2010 and 2012 tax years, we adopt that convention for consistency.

-1-

Apex was incorporated as a Delaware corporation for the sole purpose of holding the shares of Labstat to be acquired by the Fund—Apex never possessed or acquired any other assets. Although Apex possessed a Detroit mailing address, it did not have any employees, owned no real or personal property, provided no services, and sold no goods, either in Detroit or elsewhere. Various members and employees of Huron were appointed to Apex's board of directors. Apex never held a board meeting.

Apex earned dividend income from its shares of Labstat in 2010, and paid those dividends to the limited partners of the Fund. Apex paid 1% Detroit city income tax (approximately $70,000) in 2010. In 2012, Apex sold its Labstat shares to a Canadian corporation. According to the securities purchase agreement governing the sale, the closing was to be conducted in the city of Waterloo, in Ontario, Canada.[2] Apex realized significant capital gains from the sale, in the amount of approximately $36 million (Canadian). Apex again paid 1% ($319,000 (U.S.)) in city income tax to Detroit in 2012.

In 2015, Apex received a proposed assessment from Detroit indicating that Detroit had conducted an audit and had determined that Apex had miscalculated the income tax it owed for the 2010 and 2012 tax years. Detroit assessed Apex an additional $3,280.48 in tax, interest, and penalties for the 2010 tax year, and an additional $401,165.51 for the 2012 tax year.[3] Apex objected on the ground that it did not conduct business within the city of Detroit and lacked the required nexus necessary for the assessment of taxes by Detroit. Apex requested a refund of the taxes paid for the 2010 and 2012 tax years. Detroit denied the request. Apex appealed that decision to the Tribunal in 2016.

The parties filed cross-motions for summary disposition under MCR 2.116(C)(10); the dispositive issue was whether Apex possessed the requisite constitutional "nexus" with Detroit to render it subject to Detroit's taxing authority. Apex argued in the alternative that it was exempt from city income tax as a qualifying financial institution, and that if it was liable for taxation, its income should be subject to apportionment. Following a hearing on the parties' motions, the Tribunal issued a written opinion and order granting Apex's motion, denying Detroit's motion, and ordering that a refund of taxes, interest, and penalties paid by Apex be issued.

The Tribunal held that Apex did not "do business" in Detroit within the meaning of the city income tax act, MCL 141.501 et seq., because, although Apex was "doing business" under MCL 141.605, it was not doing business in Detroit; in other words, Apex lacked the constitutional "nexus" with Detroit to be subject to taxation. The Tribunal held that Detroit had not established that Apex (1) had a "commercial domicile" within the city or (2) had sufficient

_____

[2] Brian Demkowicz, a managing partner of Huron and president of Apex, testified at his deposition and averred via affidavit that the closing took place as scheduled in Canada, although Detroit notes that emails exchanged by members of Huron and the law firm hired to assist with the transaction appear to indicate that Demkowicz was not physically present at the closing. The Tribunal did not explicitly find that the closing took place in a particular location.

[3] Detroit's corporate income tax rate was increased from 1% to 2% in 2012.

"physical presence" in the city to establish such a nexus. The Tribunal also rejected Detroit's "unitary business group" theory on the ground that it was an "apportionment concept and not a method to determine nexus." The Tribunal did not address Apex's alternative argument.[4]

This appeal followed.

## II. STANDARD OF REVIEW

Our review of a Tribunal decision is "multifaceted." See *Briggs Tax Svc, LLC v Detroit Public Schools*, 485 Mich 69, 75; 780 NW2d 753 (2010).

> If fraud is not claimed, this Court reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the Tax Tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo. We also review de novo the grant or denial of a motion for summary disposition. [See *id*. (quotation marks and footnotes omitted).]

"A Tax Tribunal decision that is not supported by competent, material, and substantial evidence on the whole record is an error of law . . . ." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 366, 388-389; 576 NW2d 667 (1998). "Substantial evidence must be more than a scintilla of the evidence, although it may be substantially less than a preponderance of the evidence." *Id*. "Substantial" evidence is evidence that a reasonable mind would accept as sufficient to support the conclusion. *Kotmar, Ltd v Liquor Control Comm*, 207 Mich App 687, 689; 525 NW2d 921 (1994).

We review de novo constitutional issues. See *Elba Twp v Gratiot County Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

## III. ANALYSIS

Detroit argues that the Tribunal erred by determining that Apex lacked a sufficient nexus with Detroit to be subject to city income taxation. We disagree.

The Due Process Clause of the United States Constitution[5] "requires some definite link, some minimum connection" between the state taxing authority and the person, property, or transaction it seeks to tax. *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 312; 597 NW2d 595 (1993), quoting *Quill Corp v North Dakota ex rel Heitkamp*, 504 US 298, 306; 112 S Ct

---

[4] The Tribunal noted that Apex had already sought and received a refund of income taxes paid to the State of Michigan for the relevant tax years.

[5] US Const Am V; US Const, Am XIV. Michigan's due process clause is generally construed no more broadly than the federal guarantee. Const 1963, art 1, § 17; *People v Sierb*, 456 Mich 519, 523-524; 581 NW2d 219 (1998).

1904; 119 L Ed 2d 91 (1992). Relevant to this appeal, a state can show that a foreign corporation possesses sufficient "minimum contacts" for due process purposes by showing either that the corporation had a "physical presence" within the state, or that it purposefully availed itself of an economic market by directing its activities at the residents of the state. *Quill*, 504 US at 307.

However, a tax on a foreign corporation "that withstands a due process challenge will not necessarily withstand a Commerce Clause challenge." *Gillette*, 198 Mich App at 313-314; US Const, art I, § 8, cl 3. "A tax will sustain a Commerce Clause challenge when it: (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state." *Id*. A physical presence within the state is required to find such a substantial nexus, although this requirement may be satisfied by the presence in the state of "property or the conduct of economic activities in the taxing State performed by the [corporation's] personnel or on its behalf." *Magnetek Controls, Inc* v *Dep't of Treasury*, 221 Mich App 400, 411; 562 NW2d 219 (1997) (quotation marks and citation omitted).

Detroit imposes an income tax on its residents under an ordinance that incorporates the city income tax act, MCL 141.501 *et seq*. The act permits cities to impose an income tax on residents and non-residents doing business in the city by incorporating a uniform city income tax ordinance. See MCL 141.503(1). The act also provides that the city may enter into an agreement with the Department of Treasury under which the Department will administer, enforce, and collect the city income tax. See MCL 141.509(1). The parties do not dispute the Tribunal's application of constitutional standards to this state-authorized income tax, despite the fact that Detroit is not itself a state agency.

The parties and the Tribunal did not specifically address the application of the Due Process or Commerce Clauses to Detroit's assessment of income tax to Apex; nonetheless, the majority of the parties' arguments, and the Tribunal's decision, centered on whether Apex had a "nexus" with Detroit such that the assessment of income tax against it was constitutionally valid. However, the Tribunal, before setting forth its constitutional analysis, noted that the city income tax act authorized Detroit to collect income tax on "the taxable net profits of a corporation doing business in the city, being levied on such part of the taxable net profits as is earned by the corporation as a result of work done, services rendered and other business activities conducted in the city, as determined in accordance with this ordinance." MCL 141.614. The Tribunal further noted that the act defines "doing business" as "the conduct of any activity with the object of gain or benefit" except for certain activities related to the solicitation of orders for the sale of tangible property or the storage of personal property. MCL 141.605. The Tribunal concluded that although Apex was "doing business" within the meaning of MCL 141.605, it was not "doing business in the city" under MCL 141.614.

The Tribunal's conclusion was not based on the "misapplication of the law or adoption of a wrong principle" and was supported by "competent, material, and substantial evidence." *Briggs Tax Svc*, 485 Mich at 75. The Tribunal held that Apex's "activity" in acquiring and holding Labstat's stock satisfied the "any activity" standard and that it was "conducted with the objective of gain or benefit," noting that affidavits from employees of Huron indicated that the acquisition and sale of Labstat shares was an investment opportunity, that Apex was created to

-4-

maximize that investment, that Apex received dividends by virtue of its holding of Labstat shares, and that Apex ultimately sold Labstat shares at a profit.

The Tribunal then held that Apex was not doing business "in the city of Detroit." The Tribunal first rejected Detroit's argument that Apex's "commercial domicile" was relevant to this conclusion. The term "commercial domicile" is found in the income tax act of 1967, MCL 206.1 *et seq.*, and is defined as a corporation's "principal place from which the trade or business of the taxpayer is directed or managed." MCL 206.6(1). We agree with the Tribunal that the application of this concept, which does not appear in the city income tax act, is unnecessary to the determination of whether Apex was "doing business in the city" of Detroit; the plain language of MCL 141.614 contemplates the assessment of income tax (apportioned, if necessary) on a corporation that is doing *any* business in the city; the city need not be the "principal place from which the trade or business" of the corporation is directed or managed, MCL 206.6(1).

After dismissing the "commercial domicile" argument, the Tribunal then employed the constitutional analysis discussed in *Quill*, 504 US at 306-317, ultimately concluding that the record did not demonstrate that Apex had either a physical presence in or substantial connection with Detroit. This approach was not based on an error of law; in order to satisfy the statutory requirement of doing business "in the city," Apex would have had to at least meet the minimum constitutional standards under the Due Process Clause and Commerce Clause. See *Caterpillar, Inc v Dep't of Treasury*, 440 Mich App 400 at 413; 488 NW2d 182 (1992) (applying constitutional standards in determining if a "substantial nexus" existed between the respondent and Michigan under the Single Business Tax Act, which provided for taxation of a corporation's "business activity" in Michigan).

The Tribunal concluded that Apex lacked a "physical presence" in Detroit, noting that, although the city income tax act does not define "physical presence," the income tax act of 1967 defines physical presence as

> any activity conducted by the taxpayer or on behalf of the taxpayer by the taxpayer's employee, agent, or independent contractor acting in a representative capacity. Physical presence does not include the activities of professionals providing services in a professional capacity or other service providers if the activity is not significantly associated with the taxpayer's ability to establish and maintain a market in this state. [MCL 206.621(2)(b).]

The Tribunal rejected Detroit's argument that, although Apex had no employees, the activities of Apex's officers and directors were conducted on Apex's behalf for its benefit, finding that the evidence showed that Apex's officers and directors acted on behalf of Huron or Labstat, not Apex. That conclusion is supported by the substantial, competent, and material evidence. *Briggs Tax Svc*, 485 Mich at 75. Various officers and directors of Apex, through deposition testimony and affidavits, attested that they were employed by Huron and worked for the benefit of Huron. Essentially, these officers and directors worked to increase the value of Labstat and negotiate the sale of Labstat shares for the benefit of Huron; these activities were not conducted "on behalf" of Apex any more than a business transaction is conducted "on behalf" of the bank account into which the proceeds will be deposited. Moreover, the Tribunal noted that to the

extent Apex employed professional consultants, this fell under the exclusion found in MCL 206.621(2)(b). We agree, as the record shows that the use of professional consultants, such as law firms and marketing consultants, was done to facilitate the sale of a Canadian company to a Canadian purchaser in order to benefit the Fund's investors, not to establish or maintain a market in Detroit. Additionally, the Tribunal noted the uncontested fact that Apex was not engaged in the sale of any goods or services in Detroit (or indeed, anywhere), and declined to find that a physical presence or substantial nexus existed between Apex and Detroit based on the use of a Detroit mailing address.[6]

On appeal, Detroit does not challenge the Tribunal's reference to MCL 206.621 in defining "physical presence," but rather invites this Court to hold that the Tribunal erred in its factual findings. We decline to do so, as those findings were supported by "more than a scintilla" of evidence, *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 388-389, and a reasonable mind would accept that evidence as sufficient to support the conclusion. *Kotmar*, 207 Mich App at 689. The lack of physical presence, under *Quill*, renders Detroit's assessment of income tax against Apex violative of the Commerce Clause; Detroit therefore cannot satisfy MCL 141.614's requirement that the entity being assessed tax be doing business "in the city."[7] The Tribunal properly granted summary disposition in favor of Apex under MCR 2.116(C)(10).

Affirmed.

/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[6] The record indicates that mail received at that address was generally marked "Care of Huron Capital Partners, LLC."

[7] On appeal, Detroit does not assert the "unitary business" theory it argued below; we do not disturb the Tribunal's conclusion regarding that theory.