# STATE OF MICHIGAN

# COURT OF APPEALS

GENINICE CHAMPION,

        Plaintiff-Appellant,

v

JAMES JENKINS and KENICE BASSETT,

        Defendants-Appellees,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

UNPUBLISHED
November 19, 2015

No. 322652
Wayne Circuit Court
LC No. 13-000643-NI

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Plaintiff Geninice Champion appeals as of right the trial court's order granting summary disposition in favor of defendants James Jenkins and Kenice Bassett,[1] as well as appealing the court's ruling denying plaintiff's motion for partial summary disposition on the issue of liability. We hold that none of the parties were entitled to summary disposition given the existence of a genuine issue of material fact relative to the question of negligence in regard to the deer-related car accident that formed the basis of plaintiff's lawsuit. Accordingly, we reverse the trial court's order granting defendants' motion for summary disposition, and we affirm the court's ruling denying plaintiff's motion for partial summary disposition.

At the time of the accident, plaintiff was a passenger in a vehicle that was owned by Bassett, who is plaintiff's daughter, and being driven by Jenkins, who was plaintiff's boyfriend. According to plaintiff's deposition testimony, as they were driving down Rouge Park near

---

[1] Pursuant to a stipulation, the trial court entered an order of dismissal without prejudice with respect to defendant State Farm Mutual Automobile Insurance Company. For purposes of this opinion, our reference to "defendants" pertains to Jenkins and Bassett and does not include State Farm.

-1-

Plymouth Road in Detroit, which is a wooded area, plaintiff spotted a deer and exclaimed, "There's a deer," bringing the matter to Jenkins's immediate attention. Jenkins testified similarly in his deposition. Plaintiff and Jenkins both testified that the deer was ahead and to the right of the vehicle. Jenkins stated that the deer was standing next to a tree, approximately 10 to 15 feet away from the car. Plaintiff indicated that the deer was standing approximately 15 to 20 feet away from the roadway. According to plaintiff, when Jenkins saw the deer, "he kind of hesitated a little bit, but he was still driving." When asked to explain what she meant by "hesitated," plaintiff responded that Jenkins may have taken his foot off of the gas pedal. Jenkins, however, testified that he did not slow down when he first saw the deer standing in the woods near the road. Jenkins stated that he continued driving at the same rate of speed, believing that the deer would stay in place and not enter the roadway. Jenkins further testified regarding his belief that had he applied the brakes when he first saw the deer, he would have been able to avoid the ensuing accident, which we will describe momentarily. Jenkins observed that when he now sees a deer close to the road, he slows down or stops his vehicle, given his new-found appreciation of deer unpredictability in that situation. Plaintiff opined in her testimony that Jenkins should have hit the brakes immediately upon seeing the standing deer, considering that deer often start running when there is an approaching car. We note that the documentary evidence was silent with respect to whether there was any traffic directly behind the car.

The deer, from its standing position, proceeded to dart into the roadway and in front of the vehicle. Plaintiff testified that five seconds had elapsed between her first observance of the deer standing on the side of the road and the point when the deer entered the road, whereas Jenkins testified that it was about 15 to 20 seconds. Jenkins approximated that the deer was five to seven feet away from the front of the car upon coming into the car's pathway or line of travel. Jenkins quickly turned the steering wheel, causing the vehicle to swerve to the right and miss the deer, but the car then veered off the road and hit a tree, allegedly resulting in plaintiff's injuries. Jenkins believed that had he attempted to brake any time between when he first observed the deer and when the deer was directly in front of the car (five to seven feet ahead of it), he would have been able to stop the vehicle in time to avoid striking the deer, and thereby prevent the accident with the tree, although he probably would have skidded a bit. Jenkins testified that his "natural reflex[] was to swerve and avoid the deer" and that he lacked the time to evaluate the situation and decide whether to swerve or hit the brakes.

Jenkins testified that the speed limit in the area was "maybe 30, 35 miles an hour" and that he was driving "[a]bout 30, 35 miles an hour," including when he first saw the deer. Plaintiff maintained that she did not know what the posted speed limit was in the area, and she guessed that Jenkins was driving around 35 to 40 miles per hour.[2] We note that Jenkins testified

---

[2] In a motion for reconsideration, plaintiff submitted documentary evidence in an effort to show that Jenkins was exceeding the speeding limit at the time of the accident by anywhere from five to fifteen miles per hour, but plaintiff had not made that argument or provided supporting evidence on the issue when the motions for summary disposition were filed and argued. In light of our ultimate ruling, it is unnecessary for us to entertain the parties' arguments regarding the alleged speeding and the propriety of considering any evidence on the matter.

that the accident happened during daylight hours, that it was a clear day weather-wise, and that there were no visual obstructions.

Plaintiff alleged in her complaint that Jenkins breached various common-law, statutory, and ordinal duties "to operate the motor vehicle with due care and caution," resulting in plaintiff suffering serious impairment of bodily functions and serious permanent disfigurement.[3] Defendants filed a motion for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff had failed to adequately plead a negligence claim and that there was no genuine issue of material fact that Jenkins was not guilty of any negligence, with defendants placing heavy reliance on the sudden emergency doctrine. Plaintiff filed a response, along with her own motion for partial summary disposition under MCR 2.116(C)(10), contending that there was no genuine issue of material fact that Jenkins was negligent and that defendants were thus liable for her damages. The trial court granted defendants' motion for summary disposition and denied plaintiff's motion for partial summary disposition. Speaking from the bench, the trial court summed up its position, stating:

> I think this is a classic sudden emergency. Deer is in front of the car, five seconds[,] the driver[] maneuvers the car trying to avoid the collision, . . . winds up hitting a tree. I think that's [a] sudden emergency. That's my ruling.

The trial court earlier mentioned its view that the sudden emergency doctrine applies in a situation "that occurs so quickly that a reasonably prudent person would not have an opportunity, would not have sufficient time to avoid that hazard." In the order granting defendants' motion for summary disposition and denying plaintiff's motion, the trial court ruled that "the undisputed facts make clear that a sudden emergency existed which caused the underlying accident" and, "[a]ccordingly, Defendants cannot be at fault, and thus liable to Plaintiff, as a matter of law." Plaintiff appeals as of right.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). With respect to the principles governing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), stated:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue

---

[3] Bassett's alleged liability was predicated on Michigan's owner liability statute, MCL 257.401(1).

upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

In *Kalamazoo v Priest*, 331 Mich 43, 47; 49 NW2d 52 (1951), our Supreme Court made the following observations:

Many duties are imposed upon the drivers of motor vehicles upon public streets and highways. Some result from express statutory requirements to observe certain speed limits, to stop for certain traffic signals and signs, or, under certain circumstances, to yield the right-of-way . . . .[4] Other duties are inherent in the exercise of that due care which connotes freedom from negligence as defined by the courts. *Among the latter are the duties to maintain a reasonable and proper lookout, to see what is plainly there to be seen and give it due heed, and, before proceeding, from a suitable observation of conditions then and there existing, to form a reasonable belief that it is safe to proceed.* [Citation omitted; emphasis added.]

Addressing the issue of a driver's alleged negligence, the Michigan Supreme Court in *Baker v Alt*, 374 Mich 492, 495; 132 NW2d 614 (1965), recognized the application of basic negligence principles, asserting:

"All will agree, of course, that negligence is conduct that fails to measure up to an acceptable standard. The standard now employed by the law is that of a reasonably prudent man acting under the same or similar circumstances. Whether or not the standard has been attained is, normally, a jury question. Only under the most extreme circumstances, those, in fact, where reasonable minds could not differ upon the facts, or the inferences to be drawn therefrom, can the case be taken from the jury. If honest differences of opinion between men of average intelligence might exist the issue should not be resolved by the court alone." [Citation omitted.]

"[T]he test to be applied is what [a] hypothetical, reasonably prudent person would have done under all the circumstances of the accident, whatever they were." *Id.* at 496; see also *Baumann v Potts*, 82 Mich App 225, 230; 266 NW2d 766 (1978). In general, "[n]egligence is the failure to use ordinary care," meaning "the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under the circumstances that . . . existed in th[e] case." M Civ JI 10.02.

---

[4] "[V]iolation of a statute . . . creates a prima facie case from which a jury may draw an inference of negligence," and the "jury may also consider whether a legally sufficient excuse has been presented to refute this inference." *Zeni v Anderson*, 397 Mich 117, 122; 243 NW2d 270 (1976); see also M Civ JIs 12.01 and 12.02.

With respect to the sudden emergency doctrine, it is applicable when a collision or accident is shown to have occurred as the result of a sudden emergency that was not of a party's own making. *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139-140; 753 NW2d 591 (2008); *Freed v Salas*, 286 Mich App 300, 331; 780 NW2d 844 (2009).[5] The doctrine is a judicially crafted principle, which provides that a person who suddenly finds himself or herself in a place of danger, and is required to act without the time to consider the best means to adopt in order to avoid the impending danger, is not guilty of negligence for failing to adopt what upon subsequent reflection may have been the better option or path. *Vsetula v Whitmyer*, 187 Mich App 675, 680-681; 468 NW2d 53 (1991). "In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person' rule." *Baker*, 374 Mich at 496; see also *Baumann*, 82 Mich App at 230. The sudden emergency doctrine is triggered in cases involving unsuspected facts that take place so suddenly " 'that the normal expectations of due and ordinary care are . . . modified by the attenuating factual conditions.' " *Vsetula*, 187 Mich App at 681, quoting *Amick v Baller*, 102 Mich App 339, 341-342; 301 NW2d 530 (1980). As reflected in M Civ JI 12.02, *Baker*, *Baumann*, *Amick*, and *Vsetula*, the occurrence of a true sudden emergency does not mean that *any reaction* to it by the person confronted by the emergency situation is excused, precluding liability. Rather, the doctrine essentially provides that when a person is faced with a sudden emergency, a jury must take that emergency into consideration in assessing and evaluating whether the person acted like a reasonably prudent person under the unexpected circumstances.

Here, plaintiff, in answering defendants' motion for summary disposition, framed the crux of the issue and her argument on the issue as follows:

> Plaintiff admits both that Defendant Jenkins did not subjectively have time to evaluate the situation *once the deer was in front of the vehicle* and that this situation constituted an "emergency." Regardless, the undisputed record evidences that Defendant Jenkins'[s] *prior* negligence created that emergency in that he failed to slow, stop, or take other precautionary measures upon spotting the deer, as any reasonably careful person would have done.

At the hearing on the competing motions for summary disposition, counsel for plaintiff reiterated the above-quoted theme and elaborated:

> [A]s far as a duty, defendant Jenkins clearly had the duty to operate as a reasonably careful person would . . . . Anybody living in Michigan knows that a deer on the side of the road may run in front of the car. I can turn around and ask this courtroom, everybody here would say, what would you do if you saw a deer on the side of the road – [the trial court interrupted and asked counsel whether he would stop in that situation]

---

[5] The doctrine's application is reflected in M Civ JI 12.02, which informs jurors that "if you find that *[defendant / plaintiff]* used ordinary care and was still unable to avoid the [statutory] violation because of [State here the excuse claimed], then *[his / her]* violation is excused." See *Freed*, 286 Mich App at 330.

At a minimum I would slow down and see what the deer is going to do, honk the horn, see if it's going to run away or [run] into the road, absolutely I would. . . . .

. . .

Any reasonable person in Michigan, your Honor, I would think would understand that a deer on the side of the road is a possible potential peril. . . . .

We generally agree with counsel's observations. Taking into consideration all of the documentary evidence in a light most favorable to plaintiff, we conclude that, minimally, reasonable minds could differ regarding whether a reasonably prudent or careful person in Jenkins's shoes, acting with ordinary care and caution and seeing "what [was] plainly there to be seen and giv[ing] it due heed," *Priest*, 331 Mich at 47, would have braked, slowed down, stopped, or taken some other precautionary measure upon seeing the deer standing near the side of the road. A reasonable juror could conclude that Jenkins's actions in continuing to drive, absent any effort to brake, slow down, or stop, constituted negligence, i.e., breach of his duties as a motorist.[6] Even Jenkins himself indicated that he now takes such steps while driving if he sees deer near the roadway. And, on an issue more related to causation, Jenkins testified that had he braked when he saw the deer standing by the road, he would have been able to avoid the deer and the accident.

In regard to the sudden emergency doctrine, we accept the proposition that a deer bolting into a roadway out of nowhere presents a sudden emergency, implicating the doctrine. See *Haltom v Burleson*, 6 Mich App 89, 91-92; 148 NW2d 252 (1967) (concluding that trial court had not clearly erred in finding that driver was faced with a sudden emergency that caused her to brake after a deer jumped in front of her car). However, in this case, a sudden emergency had not yet arisen when Jenkins first saw the deer merely standing nearby and decided to keep driving normally. In *Freed*, 286 Mich App at 333, this Court observed:

The sudden emergency doctrine provides a basis for a defendant to be excused of a statutory violation in regards to the events that occur *after* the defendant discovers the emergency. Here, plaintiff did not argue that [the garbage truck driver] failed to properly respond once he observed the ambulance in his path and plaintiff's experts did not criticize [his] reactions upon seeing the ambulance. Rather, plaintiff claimed that [the garbage truck driver's] speed *before discovery of the emergency* is what prevented him from being able to stop when he applied his brakes. [Emphasis added.]

Plaintiff here espouses a comparable theory. And, viewing the evidence in a light most favorable to plaintiff, reasonable minds could differ concerning whether the emergency that developed once the deer crossed the car's path was of Jenkins's own making, given his failure to

---

[6] We do acknowledge plaintiff's deposition testimony that Jenkins may have slowed down ("hesitated") by perhaps removing his foot from the gas upon observing the deer. Any factual dispute on the matter needs to be resolved by the jury.

initially brake, slow down, or stop when he first saw the deer. Genuine issues of material fact abound in this case, and summary disposition in favor of either plaintiff or defendants is unwarranted.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan