# STATE OF MICHIGAN

# COURT OF APPEALS

---

KATHLEEN HARRIS,

        Plaintiff-Appellee,

v

HUGH HARRIS,

        Defendant-Appellee,

v

SCHNELZ WELLS, P.C.,

        Appellant.

UNPUBLISHED
August 30, 2016

No. 327590
Oakland Circuit Court
LC No. 2010-779157-DM

---

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In this post-judgment divorce proceeding, non-party appellant, Schnelz Wells, P.C., appeals as of right the trial court's order setting off receiver fees and child and spousal support arrearages owed by defendant Hugh Harris to plaintiff Kathleen Harris from plaintiff's obligation to pay defendant 50% of the equity in the marital home. Appellant contends that its recorded attorney's lien on defendant's interest in the marital home has priority over plaintiff's lien for child and spousal support arrearages, and that the trial court should have ordered appellant's lien paid before crediting defendant's support arrearage. For the reasons set forth below, we affirm the trial court's order.

## I. STATEMENT OF FACTS

This appeal arises from a dispute between plaintiff and appellant regarding who is entitled to what portion of defendant's 50% equity interest in the marital home. Plaintiff was awarded the home in the divorce judgment, dated April 26, 2012. Defendant was awarded a 50% equity interest in the home. The divorce judgment gave plaintiff the marital home as her "sole and separate property," and required her to remove defendant's name from the home by either refinancing it prior to June 30, 2014, or selling it thereafter and dividing the proceeds

-1-

equally between herself and defendant. The trial court ordered defendant to pay monthly child support of $1,807.46, 90% of any uninsured medical expenses for the former couple's two children, 70% of the cost of the children's extra-curricular activities, and monthly spousal support of $2,225. Shortly before the parties' divorce, defendant entered into a written fee agreement to obtain post-judgment legal services from appellant, who did not represent defendant during the divorce proceedings. As security for payment of appellant's fees, defendant gave appellant the right to perfect a lien on his personal and real property.

Defendant soon fell behind in his support obligations and accrued substantial arrears over the next nineteen months. In a November 19, 2013 order, the trial court appointed a receiver to take control of all funds under defendant's control and to pay his obligations to plaintiff, as well as any attorney fees and costs, and enjoined defendant from liquidating, transferring, concealing, or moving any funds under his control. The trial court appointed a different receiver the following month because the first receiver failed to act.

On March 26, 2014, appellant filed a "Notice of attorney's lien" with the Oakland County Register of Deeds, claiming a lien against defendant's 50% equity in the marital home for attorney fees and costs, and notified plaintiff of the lien via e-mail. The lien notice contained no identification of a dollar amount owed. Just over one month later, appellant was released by stipulation from representing defendant.

In his first report to the trial court, the receiver concluded that the only source of funds from which defendant's child support, spousal support, and extra-curricular arrearages could be paid was his 50% equity in the marital home. Instead of selling or refinancing the marital home to reach defendant's equity interest, the receiver recommended calculating the net equity in the house by subtracting the mortgage and some of the usual costs of sale, such as brokerage fees and transfer taxes, from a recent appraisal of the house, and then crediting defendant with half of the remaining balance. The receiver noted that a transfer of title would have to take place, and that plaintiff would likely have to refinance the house in order to remove defendant's name from the mortgage.

After receiving this report, plaintiff filed a motion seeking to "purchase" defendant's 50% equity in the marital home by setting off some of defendant's accrued child and spousal support arrears in satisfaction of his equity interest in the house. The trial court granted plaintiff's request and, after the parties could not timely agree on the necessary calculations, the receiver calculated the home's net value and informed the court in a second report that each party would be entitled to an equity credit of $60,573.295. Later, a more recent appraisal of the house resulted in a net equity value of $102,516.59, or $51,258.595 for each party. The trial court also accepted the receiver's deduction of brokerage fees and transfer taxes from the calculation of the home's net equity value.

Subsequent to the receiver's second report, plaintiff filed another motion asking the trial court to proceed with the setoff. Observing that defendant's child support and spousal support arrears exceeded his equity in the house after deducting the receiver's fee, plaintiff argued that

the attorney lien should be extinguished because no funds would be due defendant after the setoff. In addition, plaintiff argued that refinancing the house was unnecessary because defendant's mortgage obligation had been discharged in bankruptcy.[1] Appellant asserted in response that it had a valid perfected lien that should be paid from defendant's net equity after deducting the receiver fees and before anything was credited to defendant in satisfaction of his support arrearages.

The substance of appellant's and plaintiff's arguments remained essentially the same throughout the proceedings that followed. In a final order dated May 19, 2015, the trial court allotted $10,246.51 to the receiver and $40,993.78 to defendant as a credit against his support arrearages, and extinguished appellant's lien with regard to the marital home, but not to any other possible assets of defendant. This is the order from which appellant appeals.

## II. ANALYSIS

## A. LIEN PRIORITIES

Appellant first contends that, because it perfected a lien on defendant's 50% interest in the marital home on March 26, 2014, and plaintiff did not perfect her child- and spousal-support lien, the trial court erred by not subordinating plaintiff's unperfected lien for support to appellant's prior perfected lien. We disagree.

The issue presented involves statutory interpretation, which is a question of law that we review de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265; 278; 831 NW2d 204 (2013). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). Statutory language should be construed reasonably and in context, keeping in mind the purpose of the act. *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

Appellant bases its claim of priority on MCL 552.625a and MCL 552.625b. MCL 552.625a provides in pertinent part:

> (1) The amount of past due support that accrues under a judgment as provided in [MCL 552.603] . . . constitutes a lien in favor of the recipient of support against the real and personal property of a payer . . . . The lien is effective at the time that the support is due and unpaid and shall continue until the amount of past due support is paid in full or the lien is terminated by the title IV-D agency.
>
> * * *
>
> (3) A lien created under subsection (1) is subordinate to a *prior* perfected lien. . . .[Emphasis added].

---

[1] The record reveals that in 2012, defendant filed for bankruptcy under Chapter 7.

MCL 552.625b provides that the enforcement agency may perfect a lien against real or personal property of a payer who falls more than two months behind in his or her support payments. MCL 552.625b(2)-(4). When a child-support lien arises against the real or personal property of the payer, the property is subject to seizure unless the payer pays the arrearages or challenges the lien order. MCL 552.625b(5)-(7).

Appellant relies on MCL 552.625a(3) and MCL 552.625b to contend that its perfected lien against defendant's equity interest in the marital home has priority over the support lien created under MCL 552.625a(1) because neither plaintiff nor the enforcement agency perfected the lien pursuant to the procedures outlined in MCL 552.625b. In other words, because appellant perfected before plaintiff perfected, its lien has priority.

Appellant misconstrues MCL 552.625a(3) to imply that its recorded lien on defendant's equity interest operates retroactively to defeat a lien under MCL 552.625a(1). MCL 552.625a(1) creates a lien "effective at the time that the support is due and unpaid" support, while MCL 552.625a(3) operates to protect creditors who perfected their liens prior to creation of a lien under subsection (1) as well as intervening creditors who perfect before later arrearages accrue and are subject to a support lien. See *In re DeGroot*, 460 BR 159, 168 (Bankr WD Mich, 2011) (noting that a lien created by MCL 552.625a(1) refers only to arrears "due and unpaid," but not to unmatured child support arrears).[2] Where a creditor files a lien against a payer's assets prior to creation of a support lien under MCL 552.625a(1), the creditor's lien has priority pursuant to MCL 552.625a(3). A creditor who perfects a lien on a payer's property after a support lien has already arisen under MCL 552.625a(1) is an intervening creditor. *Id.* at 168-169. Pursuant to MCL 552.625a(3), the intervening creditor has priority over support that is not yet due and unpaid, i.e., unmatured support. *Id.* This interpretation of MCL 552.625a(1) and (3) is also consistent with Michigan's public-policy interest in enforcing child-support obligations. In the instant case, $40,993.78 in support arrears was "due and unpaid" on March 26, 2014, when appellant perfected its lien[3] and became entitled to recover attorney fees and costs from defendant's equity interest. Accordingly, plaintiff's lien in this amount was superior up to March 26, 2014, but subordinate to appellant's lien with regard to arrears that would accrue after that date.

Appellant argues that, if a support lien created under MCL 552.625a(1) has priority without being perfected, then MCL 552.625b is superfluous. As explained above, however, a support lien created under MCL 552.625a(1) does not have priority over the amount owed a creditor who perfects before the support lien arises, nor with regard to unmatured support in the case of an intervening perfected creditor. The provisions of MCL 552.625b come into play if the

---

[2] "Although the decisions of lower federal courts are not binding precedents, federal decisions interpreting Michigan law are often persuasive." *Omian v Chrysler Group, LLC*, 309 Mich App 297, 307 n 6; 869 NW2d 625 (2015)(quotation marks and citation omitted).

[3] This assumes that appellant's fee agreement with defendant permits what appellant claims it does and that appellant properly perfected the lien, which this Court need not decide in light of the outcome.

title IV-D agency elects to seize a payer's real or personal property unless the payer responds by paying the outstanding arrearage or requesting a review on the lien within a certain time. Here, plaintiff did not move to seize defendant's personal or real property, but to set off receiver fees and support arrearages owed by defendant from her obligation to pay him 50% of the equity in the marital home that she owned.

Appellant also contends that, under MCL 552.625a(6), a support lien created under subsection (1) cannot arise against attorney fees. However, appellant reads this section out of context. MCL 552.625a(6) reads in relevant part:

A lien under subsection (1) does not arise against any of the following:

* * *

(e) That portion of money to be paid as a distribution from a decedent's estate; as the result of a claim for negligence, personal injury, or death; under an arbitration award; under a settlement of or judgment issued in a civil action; or as compensation under a worker's compensation order, settlement, redemption order, or voluntary payment that is owed for any of the following:

(i) Attorney fees. [MCL 552.625a(6)(e).]

The attorney fees in the instant case did not arise under any of the circumstances described in (e), and, therefore, are not exempt from the lien created under MCL 552.625a(1).

To summarize, the lien created by MCL 552.625a(1) had priority until appellant recorded its lien on March 26, 2014. By that time, however, defendant owed more in child- and spousal-support arrearages and receiver fees than he had equity interest in the house. Consequently, there was nothing to which appellant's lien could attach. In addition, appellant's attorney fees are not exempt from the lien created under MCL 552.625a(1) because they are not related to a distribution from a decedent's estate, a claim for negligence, an arbitration award, a civil settlement or judgment, or to payments made under a worker's compensation order. MCL 522.625a(6)(e).

## B. EQUITY CALCULATION

Appellant next argues that the trial court erred by deducting brokerage fees and transfer taxes from the parties' equitable value in the home based on a purely fictitious sale. This error resulted in a $19,865 reduction in the equitable value of the home and, consequently, in the sum of money available to apply toward satisfaction of appellant's lien. We again disagree.

In reviewing a dispositional ruling in a divorce case, we review the trial court's findings of fact for clear error and then decide "whether the dispositional ruling was fair and equitable in light of the facts." *Hanaway v Hanaway*, 208 Mich App 278, 292; 527 NW2d 792, 799 (1995). We will affirm property disposition rulings unless we are left with the firm conviction that the distribution was inequitable. *Id*.

Appellant relies on *Hanaway* to argue that the trial court erred by deducting brokerage fees and transfer taxes in arriving at the net equity of the marital home. The defendant in *Hanaway* challenged on cross-appeal the trial court's valuation of his stock without considering tax consequences. This Court affirmed the trial court's decision, finding no clear error in light of the trial court's "determination that no sale or other taxable event was planned or contemplated." *Id.* at 300-301. Drawing a reverse analogy, the appellant in this case contends that, because neither plaintiff nor the trial court contemplated a sale of the marital home, the trial court erred by deducting brokerage fees and transfer taxes from the home's value. In light of the facts of the instant case, appellant's reliance on *Hanaway* is unavailing.

The present case is distinguishable from *Hanaway* by the fact that, unlike the trial court in *Hanaway*, the trial court here did not determine that sale of the marital home was not planned or contemplated. It is true that the court wanted to find a solution that would allow plaintiff to keep the house. It is also true that plaintiff believed it unnecessary to refinance the house because defendant's financial obligation on the mortgage was discharged in bankruptcy. However, as the receiver correctly pointed out, the judgment of divorce required plaintiff to remove defendant's name from the mortgage and failure to do so could negatively affect defendant's ability to obtain credit in the future. In light of this, and considering that defendant continued to be substantially behind in support payments, whether plaintiff will be able to keep the house remains uncertain. Had brokerage fees and transfer taxes not been deducted, if plaintiff has to sell the house because of financial difficulties caused largely by defendant's mounting support arrearages, she will bear not only all of the deducted expenses, but also all of the other costs associated with selling a house that the receiver excluded from his calculations. Considering the circumstances of this case, and considering that the goal of dispositional rulings is fairness and equity in light of the facts of a case, *Hanaway*, 208 Mich App at 292, the trial court's decision to deduct the expenses at issue from the net value of the marital home was equitable.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola